UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **THE DOMINION HOMEOWNERS ASSOCIATION,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Civil Action No.  SA-13-CA-526-XR** |
| **RHEMA INTERNATIONAL FOUNDATION d/b/a RHEMA FOUNDATION and CHRISTIAN MANSFIELD HUNTER,** | ) ) ) ) ) | |
| **Defendants.** | ) ) | |

**ORDER**

On this date, the Court considered its jurisdiction over this removed case.  For the following reasons, the Court concludes that it lacks jurisdiction and remands the case to state court.

**Background**

Plaintiff is a homeowners association charged with enforcing restrictive covenants in The Dominion, a planned luxury community located in northwest Bexar County, Texas. Defendants are alleged owners of a home in The Dominion.[1]  In its state-court petition, Plaintiff asserts that lots in The Dominion are subject to certain restrictive covenants running with the land.  Among these covenants is a requirement that all proposed lot improvements be

---

[1] Plaintiff asserts that Defendants Christian Mansfield Hunter and Rhema International Foundation are record owners of the home. Original Petition ¶ 9.  Defendant Hunter neither admits nor denies an interest in the home; however, he asserts that Defendant Rhema International Foundation d/b/a Rhema Foundation does not exist. Defendant Hunter's Motion to Dismiss at 6. This dispute between the parties has no bearing on the Court's jurisdiction, which, as explained below, is determined by evaluating the value of the "object" of the litigation solely through the viewpoint of the Plaintiff.

approved by a homeowners association architectural committee prior to construction.  Another covenant specifically limits fence height to seven feet.

Plaintiff's petition alleges violations of the restrictive covenants.  Plaintiff alleges that Defendants constructed a wood-burning fireplace featuring a chimney that rises over the perimeter fences without the approval of the homeowners association architectural committee.  Further, Plaintiff alleges that Defendants constructed a fence in breach of the seven-foot height restriction and encroaching onto a neighboring property.  Finally, Plaintiff alleges that Defendants are installing a lighting system without the prior approval of the homeowners association architectural committee.

Plaintiff sued Defendants in state court for declaratory judgment and injunctive relief.  Through its petition, Plaintiff seeks a declaration that "Defendants are not permitted to construct or maintain a wood-burning fireplace with a chimney structure, and may not construct or maintain walls or fences that encroach on neighboring property, or that exceed the height limits set forth in the Restrictive Covenants."  Further, Plaintiff asserts that it is entitled to a declaration that Defendants' outdoor lighting be submitted to the homeowners association architectural committee for approval.  Plaintiff also requests a permanent injunction "requiring Defendants to comply with the Restrictive Covenants as well as any directives or restrictions imposed on Defendants by the [homeowners association architectural committee]."  Finally, Plaintiff requests reasonable attorney's fees.

Defendant Hunter removed the case to this Court alleging federal diversity jurisdiction under 28 U.S.C. § 1332.  Plaintiff moves to remand, challenging only whether the $75,000 amount in controversy requirement for diversity jurisdiction has been established.

**Legal Standard**

A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction. *See* 28 U.S.C. § 1441(a).  On a motion to remand, the court must consider whether removal was proper.  Removal is proper in any case in which the federal court would have had original jurisdiction. *Id.*  To determine whether jurisdiction is present for removal, the Court considers the claims in the state court petition as they existed at the time of removal. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995).  The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).  Any ambiguities are to be construed against removal, as the removal statute should be strictly construed in favor of remand. *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

Under 28 U.S.C. § 1332, a federal court has jurisdiction over controversies involving disputes between citizens of different states where the amount in controversy exceeds $75,000. The parties dispute whether the amount in controversy is sufficient to confer jurisdiction.  To determine the amount in controversy, courts ordinarily consult the state court petition. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).  Where, as here, the petition does not include a specific monetary demand, the defendant must establish by a preponderance of the evidence that the amount in controversy exceeds $75,000. *See De Aguilar*, 47 F.3d at 1412.  This requirement is met if (1) it is apparent from the face of the petition that the claims are likely to exceed $75,000, or (2) the defendant sets forth "summary judgment type evidence" of facts in controversy that support a finding of the requisite amount.

*See Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).  Once a defendant is able to show that the amount in controversy exceeds the jurisdictional amount, removal is proper, provided plaintiff has not shown that it is "legally certain" his recovery will not exceed the jurisdictional threshold. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir.1995).

**Analysis**

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) (holding that the "object" in that case was the right of apple growers to conduct business free from a challenged regulation, and that the value of that right was measured by the losses that would result to the growers from the statute's enforcement).  Stated differently, the "amount in controversy is 'the value of the right to be protected or the extent of the injury to be prevented.'" *Hartford Ins. Grp. v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002) (quoting *Leininger v. Leininger,* 705 F.2d 727, 729 (5th Cir.1983)).  In the Fifth Circuit, this value is strictly determined through the viewpoint of the plaintiff; the defendant's value in defeating the action is not considered. *Garcia v. Koch Oil Co. of Texas, Inc.*, 351 F.3d 636, 639–40, 640 n.4 (5th Cir. 2003); *Puckett Mach. Co., Inc. v. United Rentals, Inc.*, 342 F. Supp. 2d 610, 614 (S.D. Miss. 2004).

Here, Plaintiff brings claims for declaratory and injunctive relief to enforce homeowners association restrictive covenants.  The "object" of the litigation is the enforcement of these covenants now and into the future.  The value of this "object," however, is uncertain.  Defendant Hunter bears the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000. *De Aguilar v. Boeing Co.*, 47 F.3d

1404, 1412 (5th Cir. 1995).  He points to two amounts: (1) the value of the declaratory and injunctive relief, which alone satisfies; and (2) the value of Plaintiff's demand for attorney's fees, which satisfies only in conjunction with the value of the declaratory relief.  The Court now considers the evidence Defendant Hunter proffers, and concludes that Defendant Hunter did not carry his burden and has not established by a preponderance of the evidence that the amount in controversy exceeds $75,000.

## A.      The Value of the Declaratory and Injunctive Relief

The value of the declaratory and injunctive relief in this case—that is, the value of enforcing the restrictive covenants now and into the future—is potentially substantial. *See Davis v. Huey*, 620 S.W.2d 561, 565 (Tex. 1981) (explaining that restrictive covenant can enhance the value of subdivision property and induce potential purchasers to buy).[2]  However, restrictive covenants are not easily appraised, and in fact, a restrictive covenant may be worthless. *See e.g. Taylor v. Burleson*, E2001-02381-COA-R3CV, 2002 WL 1870269 (Tenn. Ct. App. Aug. 15, 2002) ("Restrictive covenants can lose their force when they fail to serve a useful purpose.").  Thus the value of the restrictive covenants claimed in this case is not facially apparent, and, therefore, Defendant Hunter must produce evidence of their value to permit removal. *See Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

In briefing to the Court, Defendant Hunter submitted affidavits estimating the cost of the improvements alleged to be in violation of the covenants ($105,400), the cost to demolish these improvements ($35,000), and the cost to replace them ($105,400).  Notice of Removal at 2–3, Ex. 4.  He similarly estimated costs for the landscaping around the improvements, which

---

[2] Plaintiff too claims value in the restrictive covenants in supporting taxable property values and maintaining uniform design standards. Original Petition ¶16

he claimed would have to be removed and replaced if demolition of allegedly incompliant structures were required. Notice of Removal at 2–3, Ex. 5 (existing landscaping cost of $56,000, removal costs of $20,000, replacement costs of $56,000).   These affidavits allege amounts totaling in excess of $75,000.  Plaintiff denies that demolition and replacement is the appropriate measure, and asserts that Plaintiff's relief can be obtained through alteration of existing construction and compliance with homeowners association procedure rather than demolition. Plaintiff's Reply at 2, Ex. A.[3]  Further, Plaintiff highlights that Defendant Hunter's estimates of demolition costs to remove allegedly incompliant structures is just $35,000. Plaintiff's Reply at 3.

Defendant Hunter's affidavits and the parties' arguments for demolition and alteration costs miss the mark.  The affidavits and arguments do not establish the value of the "object" of the litigation.  That is, they do not establish the value to the Plaintiff of the enforcement of the restrictive covenants now and into the future.  They simply establish the cost to Defendants of this litigation if they lose, and that cost is irrelevant for purposes of determining the amount in controversy. *Glenwood Light Co. v. Mutual Light Co.*, 239 U.S. 121, 126 (1915) (holding, in a nuisance suit, that the value to the plaintiff of the injunction sought exceeded the cost of removing the nuisance, and therefore, the Court had jurisdiction); *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 543 (3d Cir. 1995) (holding, in a suit to enjoin the constriction of an easement, that the value to the plaintiff of the injunction exceeded the negligible cost of removing the constriction, and therefore, the court had jurisdiction); *Garcia v. Koch Oil Co. of*

---

[3] Defendant Hunter insists that he can choose to comply with the restrictive covenants, if so ordered by the Court, through demolition rather than alteration, and thus demolition is the appropriate measure for an amount in controversy analysis. Defendant Hunter's Surreply at 9. As explained below, neither the cost of demolition nor the cost of alteration is the appropriate measure.

*Texas, Inc.*, 351 F.3d 636, 639–40, 640 n.4 (5th Cir. 2003) (stating that when determining the value of the "object" of the litigation, the plaintiff's viewpoint controls); *Hartford Ins. Grp. v. Lou-Con Inc.*, 293 F.3d 908, 911 (5th Cir. 2002) (determining amount in controversy from the viewpoint of the plaintiff insurance company, which faced limited potential liability).

Defendant Hunter suggests a way to measure the value of the restrictive covenants. "[A]t a minimum, any diminution in value of immediately adjacent properties due to the alleged breach of covenants could be determined by an appraiser and then aggregated and distributed pro rata over the membership as a whole." Response at 9 n.4. However, Defendant Hunter denies his obligation to gather such relevant appraisal evidence, "just to prevent a remand." *Id.* Defendant Hunter, as the party seeking federal jurisdiction bears the burden of proving by a preponderance of the evidence that this Court has jurisdiction. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408, 1412 (5th Cir. 1995). Since he has not carried his evidentiary burden of proving the value of Plaintiff's declaratory or injunctive relief, the Court will not consider that value in determining the amount in controversy. *See Puckett Mach. Co., Inc. v. United Rentals, Inc.*, 342 F. Supp. 2d 610, 616 (S.D. Miss. 2004) (holding, in a covenant not to compete context, that the removing defendant failed to meet his burden when submitting only evidence of revenue earned rather than the relevant evidence of profits earned).

**B.      The Value of the Demand for Attorney's Fees**

In addition to the demands for declaratory and injunctive relief, Plaintiff's original petition also includes a demand for attorney's fees, which Plaintiff is entitled to if it succeeds.[4]

---

[4] Plaintiff requested attorney's fees under Chapters 37 and 38 of the Texas Civil Practice and Remedies Code. These chapters allow suits for declaratory judgment and breach of contract, respectively. An award under Chapter 37 is discretionary; however, an award under Chapter 38 is mandatory. Tex. Civ. Prac. & Rem. Code § 37.009 ("may award"); *Id.* § 38.001 ("may recover"); *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) (noting

In the Fifth Circuit, attorney's fees are included in calculating the amount in controversy for diversity jurisdiction. *Foret v. S. Farm Bureau Life Ins. Co.*, 918 F.2d 534, 537 (5th Cir. 1990) (citing 14A C. Wright & A. Miller, *Federal Practice & Procedure* § 3712, at 176 (2d ed. 1985) ("The law is now quite settled that attorney's fees are a part of the matter in controversy when they are provided for by contract or by state statute.")). Though speculative, the Court also considers future attorney's fees that will be earned as the case proceeds. *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 724 (5th Cir. 2002) (finding that plaintiff met its burden of establishing the threshold amount in controversy through an undisputed affidavit claiming that, based on the nature of the case, aggregate attorney's fees would likely exceed $75,000); *Albright v. IBM Lender Process Servs. Inc.*, CIV.A. H-11-1045, 2011 WL 5921379 (S.D. Tex. Nov. 28, 2011) ("[T]he potential future award of attorney's fees is included in calculating the amount in controversy.")

Here, it is not facially apparent that an award of reasonable attorney's fees would reach the threshold amount of $75,000; therefore, Defendant Hunter must prove by a preponderance of evidence that an award of attorney's fees would likely reach that amount.[5] To this end, Defendant Hunter submitted an affidavit asserting likely attorney's fees of up to $60,000. Defendant Hunter's Response at 21, Ex. 7. Plaintiff challenged this amount, but only provided a list of its attorney's fees to the date of the filing of the state-court petition. Plaintiff's Reply at 4, Ex. B (listing an amount of only $8,630). Accordingly, the evidence before the Court does not establish that attorney's fees in this case are likely to meet the statutory minimum for

that the Declaratory Judgments Act does not require an award of attorney fees to the prevailing party, but that statutes providing that a party "may recover" are not discretionary).

[5] Since, as discussed above, Defendant Hunter did not provide evidence for this Court to consider the value of Plaintiff's equitable relief, the value of the attorney's fees demanded must alone meet the threshold.

diversity jurisdiction either standing alone or in combination with the value of the declaratory and injunctive relief.

## Conclusion

The Court finds that Defendant Hunter has not carried his burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000; therefore, the case is remanded pursuant to 28 U.S.C. 1447(c) for lack of subject matter jurisdiction.

Plaintiff's motion to remand (docket no. 6) is GRANTED.  Plaintiff's request for attorney's fees and costs related to the removal of this case is denied.  The Clerk is directed to remand this case to state court and to close this case.

It is so ORDERED.

SIGNED this 10th day of October, 2013.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE